# STATE OF MICHIGAN

# COURT OF APPEALS

LAURA MONACO, Personal Representative of
the ESTATE OF ALISON MONACO,

      Plaintiff-Appellee,

and

COVENANT MEDICAL CENTER, INC., and
MARY FREE BED REHABILITATION
HOSPITAL,

      Intervenors-Plaintiffs/Appellees,

v

HOME-OWNERS INSURANCE COMPANY,

      Defendant-Appellant.

FOR PUBLICATION
November 15, 2016
9:10 a.m.

No. 329214
Huron Circuit Court
LC No. 13-105217-NF

Before: JANSEN, P.J., and MURPHY and RIORDAN, JJ.

MURPHY, J.

In this dispute concerning the recovery of personal protection insurance benefits, commonly referred to as PIP benefits, under the no-fault act, MCL 500.3101 *et seq.*, defendant Home-Owners Insurance Company (HOIC) appeals as of right the judgment entered in favor of plaintiff Laura Monaco (hereafter "plaintiff" in the singular) and intervening plaintiffs Covenant Medical Center, Inc., and Mary Free Bed Rehabilitation Hospital (jointly referred to as "the medical providers").[1] The judgment reflected the verdict rendered by a jury following trial and certain stipulations between HOIC and the medical providers regarding the amount of damages. HOIC challenges the pretrial denial of its motion for summary disposition and the denial of its motion for a directed verdict. There is but one issue in this appeal that we must resolve. It concerns the legal question whether a person injured in a motor vehicle accident is barred from recovering PIP benefits under MCL 500.3113(a), which generally precludes coverage when a person used a vehicle that he or she had "taken unlawfully," where the owner of the vehicle

---

[1] Any reference in this opinion to "plaintiffs" in the plural shall pertain to plaintiff and the medical providers.

-1-

permitted, gave consent to, or otherwise authorized the injured person to take and use the vehicle, but where the injured person used the vehicle in violation of the law with the owner's knowledge. We hold that PIP benefits are available in such circumstances, given that the phrase "taken unlawfully," as employed in MCL 500.3113(a), does not encompass the unlawful *use or operation* of a motor vehicle, just the unlawful *taking* of a vehicle. Accordingly, we affirm.

## I. BACKGROUND

In July 2012, plaintiff's daughter Alison, then 15 years old, sustained severe injuries when she lost control of a vehicle that she was driving and crashed into a roadside ditch. At the time, Alison had completed and passed a driver's training course and obtained a permit to drive, but only if accompanied by a licensed parent, guardian, or 21-year-old, and she was not so accompanied when the accident occurred.[2] The motor vehicle was owned by plaintiff, customarily driven by plaintiff's partner, and insured by HOIC. The medical providers treated Alison's extensive injuries and assisted in her rehabilitation.

Plaintiff filed a claim with HOIC for PIP benefits. In a recorded statement, plaintiff told HOIC's insurance adjustor that Alison did not have permission to drive the vehicle when the accident took place. HOIC thus denied coverage under MCL 500.3113(a) and language in the insurance policy that tracked the statutory provision. Plaintiff then telephoned the adjustor inquiring if there would be coverage if her partner had permitted Alison to use the vehicle. According to HOIC's adjustor, she informed plaintiff that HOIC would "reevaluate" the question of coverage in that event, but the adjuster never heard back from plaintiff in the matter.

Plaintiff, then acting as Alison's next friend, filed suit challenging HOIC's denial of PIP benefits. The medical providers, aligning themselves with plaintiff, intervened in the action, seeking reimbursement for costs associated with providing medical care to Alison. HOIC filed a motion for summary disposition under MCR 2.116(C)(10), asserting that plaintiff had admitted during her deposition that she had previously lied to HOIC's adjuster when she stated that Alison lacked permission to drive the vehicle. HOIC argued that MCL 500.3113(a) barred Alison from obtaining PIP benefits because she took the vehicle unlawfully and did not reasonably believe that she had permission to use the car. HOIC maintained that "self-serving" deposition testimony given by plaintiff, her partner, and Alison, which contradicted plaintiff's earlier recorded statement, was inadequate to establish a genuine issue of material fact for trial. HOIC additionally contended that Alison had taken the vehicle unlawfully regardless of any possible parental permission, considering that, in light of Alison's age and the restricted nature of the driver's permit, plaintiff had violated the law by allowing or authorizing Alison's unaccompanied operation of the car.

---

[2] MCL 257.310e(4) applied to Alison, and it provides that "[a] person issued a level 1 graduated licensing status may operate a motor vehicle only when accompanied either by a licensed parent or legal guardian or, with the permission of the parent or legal guardian, a licensed driver 21 years of age or older."

Plaintiffs responded that Alison had taken the vehicle lawfully, citing the deposition testimony of plaintiff, her partner, and Alison, which indicated that Alison had permission to take and drive the car on her own at the time of the accident. Plaintiffs further asserted that Alison's lack of a driver's license that would have allowed her to drive on her own was irrelevant with respect to whether she took the car lawfully, as HOIC was conflating unlawful taking with unlawful use. The trial court denied HOIC's motion for summary disposition, concluding that there was a factual issue regarding whether Alison had permission to take the vehicle and that the law supported plaintiffs' proffered distinction between "taking" and "using" a vehicle for purposes of MCL 500.3113(a).

At trial, plaintiff testified that her initial statement to the insurance adjustor was not truthful and that Alison actually had permission to take and use the vehicle on the day of the crash. Plaintiff admitted that she feared criminal liability for allowing her daughter to drive when she gave the statement to HOIC's adjustor. Plaintiff's partner testified that Alison had permission to take and use the vehicle on the day of the accident, and Alison indicated that she frequently drove the vehicle with plaintiff's knowledge and consent.[3] Plaintiffs additionally produced witnesses who testified that they saw Alison driving the vehicle alone on several occasions, with one witness claiming that he observed plaintiff's partner at times giving Alison the car keys. HOIC in turn elicited testimony from witnesses who questioned the credibility of plaintiffs' witnesses, and one of HOIC's witnesses testified that the partner had stated that he told Alison not to take the vehicle.

At trial, HOIC renewed its summary disposition arguments in moving for a directed verdict at the close of proofs, and the court again rejected them. HOIC and the medical providers had stipulated before trial to the amount of damages (outstanding medical charges plus penalty interest) should there be liability for PIP benefits, leaving for the jury to resolve the issue of liability. And the jury concluded that HOIC had failed to meet its burden of showing that Alison took the car without permission, effectively rendering HOIC liable for the stipulated sums. The jury, of course, reached the same conclusion on liability relative to plaintiff, and the jurors made additional findings in regard to the nature and amount of allowable expenses and interest to which plaintiff was entitled. A judgment consistent with the jury's verdict and the stipulation was entered, and this appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW AND GOVERNING TEST FOR SUMMARY DISPOSITION AND DIRECTED VERDICT MOTIONS

"A trial court's decision regarding a motion for summary disposition and a motion for a directed verdict are reviewed de novo[,]" *Lewis v LeGrow*, 258 Mich App 175, 192; 670 NW2d 675 (2003), as is the question of statutory interpretation, *Krohn v Home-Owners Ins Co*, 490

---

[3] Tragically, Alison died in an unrelated house fire before trial; therefore, the trial court allowed her deposition testimony to be read into the trial record.

Mich 145, 155; 802 NW2d 281 (2011). The test with respect to a motion for summary disposition brought under MCR 2.116(C)(10) is essentially the same in regard to a motion for a directed verdict, "namely, whether reasonable minds, taking the evidence in a light most favorable to the nonmovant, could reach different conclusions regarding a material fact." *Skinner v Square D Co*, 445 Mich 153, 165 n 9; 516 NW2d 475 (1994).

## B. PRINCIPLES OF STATUTORY CONSTRUCTION

The Michigan Supreme Court in *Whitman v City of Burton*, 493 Mich 303, 311-312; 831 NW2d 223 (2013), set forth the well-established principles governing statutory construction, observing:

> When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature. To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent. [Citations omitted.]

## C. DISCUSSION

HOIC contends on appeal that Alison necessarily took the vehicle unlawfully given her age and restricted license, precluding entitlement to PIP benefits pursuant to MCL 500.3113(a). We note that HOIC does not challenge the jury's factual determination that HOIC failed to satisfy its burden of showing that Alison took the car without permission. HOIC's appellate argument is squarely one of law, entailing statutory construction. There is no genuine issue of material fact that Alison was only 15 years old when the accident took place and that in light of the limited nature of her license or permit, it was unlawful for her to drive the car unaccompanied by a licensed adult identified in MCL 257.310e(4). Thus, we must entertain the question whether those undisputed facts bar the recovery of PIP benefits under MCL 500.3113(a) as a matter of law, such that an order granting summary disposition or a directed verdict should have entered in favor of HOIC.

"The Michigan no-fault act requires that owners and registrants of automobiles carry personal protection insurance to cover an insured's medical care arising from injuries sustained in an automobile accident." *Krohn*, 490 Mich at 155, citing MCL 500.3101(1) and MCL 500.3105(1). At the time of Alison's accident, MCL 500.3113(a) provided:

> A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:

(a) The person was using a motor vehicle . . . which he or she had *taken unlawfully*, unless the person reasonably believed that he or she was entitled to take and use the vehicle. [Emphasis added.]

This provision was subsequently amended pursuant to 2014 PA 489, but it still generally bars the recovery of PIP benefits by a person who operated a vehicle that he or she had "taken unlawfully[.]" The first level of inquiry when applying MCL 500.3113(a) always concerns whether the taking of a vehicle was unlawful, and if the taking was lawful, the inquiry ends as the statute is inapplicable. *Henry Ford Health Sys v Esurance Ins Co*, 288 Mich App 593, 599; 808 NW2d 1 (2010).

In construing the language "taken unlawfully," our Supreme Court in *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 516-517; 821 NW2d 117 (2012), observed:

> In determining the Legislature's intended meaning of the phrase "taken unlawfully," we must accord the phrase its plain and ordinary meaning, and we may consult dictionary definitions because the no-fault act does not define the phrase. The word "unlawful" commonly means "not lawful; contrary to law; illegal," and the word "take" is commonly understood as "to get into one's hands or possession by voluntary action." When the words are considered together, the plain meaning of the phrase "taken unlawfully" readily embraces a situation in which an individual gains possession of a vehicle contrary to Michigan law. [Citations omitted.]

The *Spectrum Health* Court further held that "any person who takes a vehicle contrary to a provision of the Michigan Penal Code—including MCL 750.413 and MCL 750.414, informally known as the 'joyriding' statutes—has taken the vehicle unlawfully for purposes of MCL 500.3113(a)." *Id*. at 509. After analyzing the language of the two joyriding statutes, the Court concluded that both "make it unlawful to take any motor vehicle without authority, effectively defining an unlawful taking of a vehicle as that which is unauthorized." *Id*. at 517-518. A taking does not have to be larcenous to qualify as unlawful, and MCL 500.3113(a) applies to any person who takes a vehicle without the owner's authority, regardless of whether that person had the intent to steal the vehicle. *Id*. at 518. MCL 500.3113(a) examines the legality of a taking from the perspective of the driver. *Id*. at 522. The following language from *Spectrum Health* effectively belies HOIC's argument in this case:

> The "authority" referred to in the joyriding statutes is obviously the authority of the owner of the vehicle. Accordingly, for purposes of MCL 500.3113(a), a vehicle is "unlawfully taken" if it is taken without the authority of its owner. . . . Therefore, MCL 500.3113(a) does not apply to the lawful owner of a vehicle, even if that person drives it under a circumstance that renders him or her legally unable to operate a vehicle. However, driving while legally unable may have implications under MCL 500.3113(a) for a person who *has* taken a vehicle unlawfully because as a matter of law, one cannot reasonably believe that he or she is entitled to use a vehicle when the person knows that he or she is

unable to legally operate the vehicle. [*Id.* at 518 n 25 (citation and quotation marks omitted; emphasis in original).]

As reflected in this language, the owner of a vehicle could never be barred from coverage under MCL 500.3113(a) because he or she would not be capable of taking the vehicle absent owner authorization; he or she is the owner. And, importantly, this is true even if the owner drives the vehicle "under a circumstance that renders him or her legally unable to operate a vehicle." *Id.* This statement effectively signifies, in direct contradiction of HOIC's theory, that the unlawful *operation* or *use* of a motor vehicle is irrelevant with respect to examining the "taken unlawfully" phrase in MCL 500.3113(a), otherwise the Supreme Court's example concerning an owner would not hold water. Our view is buttressed by the final sentence in the quoted passage from *Spectrum Health*, which indicates that the unlawful operation or use of a motor vehicle is only relevant when the injured person *had actually* unlawfully taken the vehicle and was attempting to invoke the language in MCL 500.3113(a) allowing recovery where "the person reasonably believed that he or she was entitled to take and use the vehicle," despite the unlawful taking. *Spectrum Health*, 492 Mich at 518 n 25. Thus, the unlawful operation or use of a motor vehicle is simply not a concern in the context of analyzing whether the vehicle was taken unlawfully.

The distinction between unlawfully taking a motor vehicle and unlawfully using a vehicle was recognized in *Rambin v Allstate Ins Co*, 495 Mich 316, 331; 852 NW2d 34 (2014), wherein the Supreme Court stated that "the unlawful use of a vehicle . . . is not relevant under the unlawful taking language in MCL 500.3113[.]" And this Court has observed that, with respect to the language in MCL 500.3113(a), "[c]learly, the terms 'take' and 'use' are not interchangeable or even synonymous; obtaining possession of an object is very different from employing that object or putting it into service." *Amerisure Ins Co v Plumb*, 282 Mich App 417, 428; 766 NW2d 878 (2009), abrogated in part on other grounds by *Rambin*, 495 Mich at 323-324 n 7.

HOIC argues that it was unlawful for plaintiff to give Alison permission to drive the car under the Michigan Vehicle Code (MVC), MCL 257.1 *et seq.*; therefore, there effectively was no recognizable authorization to operate the vehicle, resulting in the unlawful taking of the vehicle by Alison. MCL 257.326 provides that "[n]o person shall knowingly authorize or permit a motor vehicle owned by him or under his control *to be driven* by any person in violation of any of the provisions of [the MVC]." (Emphasis added.) As noted earlier in this opinion, Alison was driving the car in violation of the MVC, particularly MCL 257.310e(4). Although it may have been unlawful for plaintiff, as owner of the car, to authorize or permit Alison *to drive the vehicle* in violation of the law, it had no bearing on, nor did it negate, the authorization and permission given by plaintiff for Alison *to take the vehicle*. Alison did not "gain possession of [the] vehicle contrary to Michigan law[,]" *Spectrum Health*, 492 Mich at 517; rather, she unlawfully used the vehicle, i.e., Alison "put[] it into service" in violation of Michigan law, *Plumb*, 282 Mich App at 428. Plaintiff was not in violation of MCL 257.326 by merely allowing Alison to take possession and control of the car; it was the permission allowing Alison to drive the car that implicated MCL 257.326. While plaintiff's actions might have subjected her to prosecution under MCL 257.326, they did not turn an authorized or permitted taking into an unlawful taking.

## III. CONCLUSION

Here, all of HOIC's arguments are unavailing as they ultimately conflate the unlawful use or operation of a motor vehicle with the unlawful taking of a vehicle. Despite HOIC's protestation to the contrary and our appreciation that a very fine line exists, "taking" and "use" are simply not synonymous or interchangeable for purposes of MCL 500.3113(a), as reflected in the statute's plain and unambiguous language and the caselaw interpreting the statute. The trial court did not err in denying HOIC's motions for summary disposition and a directed verdict.

Affirmed. Having fully prevailed on appeal, plaintiffs are awarded taxable costs under MCR 7.219.

/s/ William B. Murphy
/s/ Kathleen Jansen
/s/ Michael J. Riordan